ANN BESSEY *vs.* INHABITANTS OF UNITY PLANTATION.

Kennebec, 1874.—March 16, 1876.

*Town. Plantation.*

To show money had and received to the use of the plaintiff by a town or plantation, it will not suffice merely to show money lent by the plaintiff upon the representations of its officers that it was required for legitimate expenditures, without showing the appropriation of the money to the legitimate expenses of the town or plantation.

An order, drawn by the assessors of a plantation, (who have in general the same powers as selectmen of towns,) upon their treasurer, and delivered by him to the plaintiff, when the plaintiff let him have the money, would constitute an "obligation" binding upon the inhabitants of the plantation to repay the money, provided the vote of the plantation conferred upon the treasurer legal authority to hire it.

A plantation, whether originally organized for election purposes only or otherwise, which during the late rebellion had its quota of soldiers under the several calls for troops regularly assigned to it, is within the purview of the various legislative enactments making valid the acts and doings of cities,

towns and plantations in agreeing to pay bounties to volunteers, drafted men and substitutes and in providing the means to pay such bounties by loan or otherwise; and notes and orders signed by their assessors, when delivered, by their lawfully authorized agents in pursuance of a vote passed at a legal meeting of their inhabitants empowering such agents to hire money for that purpose, to the party who loans the money, are thereby made valid and binding; and payment thereof cannot be successfully resisted upon the ground that such plantation had no such organization as made it capable of contracting for that or any other purpose.

To enable a party to recover against the plantation for money lent in pursuance of such a vote, it must appear that the sum was within the amount which the agent was empowered to hire; and if this depends upon the number of men required to fill the quota of the plantation, the plaintiff must show how many were required.

It must appear also that such vote was passed at a meeting of the plantation legally called and holden, and under articles sufficiently describing the character of the business upon which the voters were called to act. The certificate of the assessors of the plantation indorsed upon the warrant for the meeting, that they "have notified the within named inhabitants by posting up a written notice seven days, as the law directs, of the time and place, and the intention of said meeting," does not afford legal evidence that the meeting was regularly called, notified and holden.

On exceptions.

Assumpsit for money had and received, evidenced by an order for $371, on the treasurer of Unity plantation, dated March 22, 1865, signed "Edwin E. Hall," and "Gilbert Libbey, assessors of Unity plantation." The money in exchange for the order was delivered to Francis B. Lane, acting treasurer of the plantation, also their special agent, by vote passed February 4, 1865, to fill the quota under the call of December 19, 1864.

Under the several calls of the president for troops from July 2, 1862, to December 19, 1864, the quotas for Unity plantation, required in all ten men. Its quota under the last named call was two; there was also then a deficit of one man under previous calls.

The defendants' treasurer paid the plaintiff interest on the order in May, 1869.

After the evidence was out, the justice presiding instructed the jury as follows: "If the parties hiring this money of the plaintiff had authority to do it, she would be entitled to recover; if they had not authority as I view the testimony in the case, she would not have a right to recover. If the plaintiff can recover at all she can recover upon the order; and it is purely a question of

law, whether they had authority or not, and depends upon an examination of the records. An order is produced here, signed by men who were acting as assessors of that plantation. The money was obtained by the agent who seemed to have some color of election, as a special agent of the plantation, and so far as it appears, the money was loaned in good faith by the plaintiff, and I do not think it makes any difference under those circumstances what the assessors did with.it afterward. If they had authority, the plantation would be liable, and I feel bound to give an instruction, rather *pro forma* than otherwise, (for I have not had an opportunity to examine,) that the plaintiff would be entitled to recover, and the clerk will make up the verdict, and your foreman can sign it without leaving your seats."

The defendants, the verdict being for the plaintiff, excepted.

*J. Baker*, for the defendants.

I. The plantation was organized under the statute of October. 2, 1840, for election purposes only.

II. This plantation had no power in 1865, to raise money by taxation or loan for any purposes. Public Laws 1840, c. 89, § 1. Plantations organized under this act had power only to choose a moderator, clerk and three assessors, and to perpetuate their organization by annual meetings for voting purposes only.

By intervening acts between that act and the revision of 1857, their powers were increased so that they could elect assessors, clerk, surveyors of lumber, fence viewers and constables, and that was all. There was no power to raise money, or assess or collect taxes, granted to them by any of these acts. Between 1857 and 1865, no new powers were conferred on this class of plantations. So that when the meeting of February 4, 1865, was called and held, this plantation had the powers contained in R. S. 1857, c. 3, §§ 70 to 75 inclusive, and no more. There was no power to raise money, or to assess, or to elect a treasurer or collector. There was no treasury.

So the counsel contended, that if all the proceedings in relation to the order in suit were legal in form, they were still void, and conferred no authority on any officer or agent of the defendants to bind them. He also contended that the proceedings were not

regular in form, and that they were not cured by the ratification acts of 1865, c. 298, and of 1866, c. 59 ; and further, that the plaintiff could not recover on the money count, for the reason, among others, that it was not proved that any man was actually put into the service, and credited to their quota. *Bank* v. *Lowell*, 109 Mass., 214.

*A. Libbey*, for the plaintiff.

I. The state tax acts are public acts, and show that the plantation has for many years been taxed the same as towns.

The records put in show that the defendants were acting as an organized plantation.

For all purposes within the powers of plantations the assessors have the same powers as the selectmen of towns.

II. A quota having been assigned to this plantation in the same manner as to towns, it was subject to the same duties in regard to filling it, and had the power to raise money by taxation, or to borrow money for that purpose. Act of 1864, c. 227, §§ 5 and 6.

III. The money having been borrowed by the agent held out as authorized by the action of the defendants, for a purpose authorized by law, they are estopped from saying now that their action was technically irregular, and that they are not bound.

Selectmen of towns and assessors of plantations have power to borrow money for lawful purposes, to meet the obligations of the town or plantation without special authority. *Andover* v. *Grafton*, 7 N. H., 298. *Pike* v. *Middleton*, 12 N. H., 278. Dillon on Municipal Corporations, § 384. *Argenti* v. *San Francisco*, 16 Cal., 255.

Such has been the practice of New England towns for many years.

The action of the officers *de facto* bound the defendants. *Cushing* v. *Frankfort*, 57 Maine, 541.

Having received and retained the money, they are liable under the money count. *Smart* v. *Blanchard*, 5 Chand., N. H., 137. *Alleghany City* v. *McClurkan*, 14 Penn., 81. *Atlantic Bank* v. *Merchants' Bank*, 10 Gray, 532.

IV. The defendants have ratified the loan by paying interest

through Hall, their treasurer; a stronger case on this point than *Belfast & M. H. L. R. R. Co.* v. *Brooks*, 60 Maine, 568.

BARROWS, J.   The money which the plaintiff here claims to recover, as had and received by the inhabitants of Unity plantation to her use, was delivered by her, March 22, 1865, to one Lane, acting treasurer of the plantation, upon the faith of an order signed by two of the assessors, and addressed to the treasurer or his successor, and commanding him to pay the plaintiff the sum therein named, in one year with interest, "it being for money lent." It appears, and is not questioned, that the officers of the plantation, when they got the money of the plaintiff, informed her and her father, under whose advice she was acting, that they wanted the money to pay for soldiers to fill the quota of the plantation. Whether it was in fact so applied, is a matter not placed beyond controversy by the testimony reported ; but may depend upon the opinion entertained by the jury of the truthfulness of the assessor and treasurer, and the accuracy of their recollection. No occasion for the hiring of money by the plantation for any other purpose appears to have existed.

One of the grounds upon which the defendants resist payment is, that their plantation was organized for election purposes only and was therefore incapable of contracting or of raising money by taxation or loan.

The records offered in evidence show that whatever the original purpose and form of the organization might have been, this plantation, for a series of years prior to this transaction, had been exercising most if not all of the functions belonging to the other class of plantations. It is probable that some of the plantations, originally organized for election purposes only under the act of October 2, 1840, passed into the other class under the provisions of R. S. of 1841, c. 14, §§ 40–49, upon being ordered by the legislature, from time to time, to pay their proportion of the public taxes, with very imperfect records of the proceedings which completed their organization.

But whether that was the case with Unity plantation or not, the single fact, (which appears in the records of the adjutant general's office,) that during the war it had its quota of soldiers under

the different calls for troops regularly assigned to it, makes it certain that it comes within the purview of the various legislative acts affecting the powers and duties of towns and plantations in relation to the procurement of soldiers, the business of state aid, and kindred topics. Whenever a duty is imposed all the power necessary for its proper performance is given, if not expressly, then by inevitable implication. We cannot doubt that, whatever the form of its original organization, any plantation, which had a quota of soldiers assigned to it, received sufficient legislative recognition as duly organized, in the successive acts, "to make valid the acts and doings of cities, towns and plantations in voting and making provision for the payment of bounties to volunteers" &c., to be bound by those acts so far as they are found applicable to its votes, and the contracts made by those who were its acting officers or its lawfully authorized agents.

The inhabitants of this plantation cannot rid themselves of the liability to pay this money upon the plea that they had no such corporate organization or existence as enabled them to make the promise which the plaintiff alleges and they deny.

But all these acts and contracts, whether of towns or plantations, were, when initiated, plainly *ultra vires,* if we look only at the ordinary powers and duties of such corporations ; and they can be held valid only as they may have been authorized or ratified by certain legislative enactments dictated by the supposed exigencies of the country and the times.

It may be true, as argued by the plaintiff's counsel and as held in the cases which he cites, that selectmen of towns and assessors of plantations, (who, under our statutes, have substantially the same powers as selectmen,) have, by virtue of their office, power to borrow money for lawful purposes to meet the obligations of the town or plantation, without being specially authorized. But where the lender proceeds against the town or plantation upon this ground we think he is bound, in order to recover, to show the appropriation of the money to legitimate expenses of the town or plantation. There can be no such thing as a general and unlimited authority in municipal officers to borrow money on the credit of the town or plantation by which they are elected, with-

out regard to·the purposes to which it is devoted. To show money had and received to the use of the plaintiff by a town or planta-tion, it will not suffice merely to show money lent by the plaintiff upon the representations of its officers, that it was required for legitimate expenditures.

But it is needless now to discuss further the possible liability of the defendants upon this ground, or what it is incumbent upon the plaintiff to prove in order to establish it; because the case was not committed to the jury with directions to ascertain the facts upon which it must depend.

On the contrary, the verdict was returned upon a distinct *pro forma* instruction that the plaintiff could recover only by proving the authority of the parties who received the money from her to borrow it on the credit of the plantation, and that the question of the existence of such authority was purely one of law, depending upon an examination of the records and, finally, that the record evidence entitled her to a verdict.

It is in vain for us here and now to discuss or consider the ques-tion whether a ·corporation of this description may not be held liable upon notes or orders issued by its officers without express authority, upon the ground that it has received the· benefit of the money thereby obtained, or that it has ratified their acts by a sub-sequent recognition of them as valid and binding, or by claiming and receiving reimbursements on account of them, or on the ground of an equitable estoppel by matters *en pais*. The facts upon which such liability must rest, have not been ascertained by the verdict, and are apparently·more or less in controversy.

The question presented is, whether the records show sufficient authority in the parties procuring this money of the plaintiff to bind the plantation for its repayment.

The plaintiff relies upon a record of a meeting held February 4, 1865, at which it appears that the plantation chose F. B. Lane special agent to fill the quota under the call of December 19, 1864 and voted to raise "not to exceed three hundred and fifty dollars per man, the same paid drafted men," and to "empower agent to hire money to furnish men to fill said quota, and author-ize him to hire money to amount voted to each man so furnished

on the credit of the plantation, and give obligation binding the inhabitants of said plantation paying tax thereon."

Among the objections urged by the defendant against a recovery upon the order is this that it is signed by the assessors, while the power to hire the money, if any was conferred, was given not to them but to Lane as special agent. But the uncontradicted testimony shows that the plaintiff received the order from Lane to whom it was delivered by the assessors signed in blank, to serve as evidence of the loan with whomsoever he might negotiate it. It became operative only upon its delivery by Lane to the plaintiff when she let the money go into his hands on the strength of it.

The negotiation was conducted by Lane who was the special agent under the vote and had also been elected treasurer of the plantation as appears by the record of the March meeting, 1865. The vote prescribed no particular form in which Lane was to "give obligation binding the inhabitants of the plantation" for the money which the vote in express terms authorized him to hire on their credit; and we see no substantial force in this objection to the mode in which he executed the power.

The order drawn by the assessors, (who have in general the same powers as selectmen of towns,) upon Lane as treasurer and delivered by him to the plaintiff when she let him have the money, would constitute an "obligation" binding upon the inhabitants of the plantation to repay the money, provided the vote conferred upon Lane legal authority to hire it.

More formidable obstacles to the plaintiff's recovery appear, when we inquire as to the validity of Lane's authority. The plaintiff claims that the plantation might lawfully pass the vote in question by virtue of § 6, c. 227, Laws of 1864, whereby any city, town or plantation, was authorized to make temporary provision for, and pay to its recruits, a bounty of $300 under certain conditions. But the vote contemplates the payment of a larger bounty than was warranted by the act. The action of the plantation was not within the scope of the authority granted. The plaintiff must find other support for it, or it will not avail her.

By § 1, c. 298, of the Laws of 1865, approved February 17, 1865, the past acts and doings of cities, towns and plantations in

offering, paying, agreeing to pay, and in raising and providing the means to pay, bounties to volunteers, drafted men, or substitutes of drafted or enrolled men, who have been or shall hereafter be actually mustered into the military or naval service of the United States, were made valid.   The vote we are considering was passed at a meeting of the plantation held February 4, 1865, and if the meeting was regularly called and held, it comes within the purview of this act.

The plaintiff did not lend the money nor receive the order until March following; and the provisions in the act of February 17, making valid all notes and town orders given by the municipal officers of any city, town or plantation, in pursuance of a previous vote for the benefit of volunteers, &c., and also "all contracts made by said officers, or their duly authorized agents with third persons . . . for the purpose of raising means to pay such bounties so voted," cannot aid her; for they apply only to notes, |town orders and contracts, in existence at the time of the passage of the act.

The defendants contend that the somewhat similar provision in § 2, c. 59, Laws of 1866, though subsequently enacted, is without effect in this case on the ground that the contract for the purpose of providing the means to pay bounties here was not made by the municipal officers of the plantation or any authorized agent of those officers.

This is too narrow a construction of a remedial act, which was doubtless intended to ratify and make valid all securities given by the municipal officers of a city, town or plantation, for the purpose designated, under due authority from the corporation itself, whether the negotiation, contract or actual manual tradition of the securities was made by those officers personally or by some one else lawfully authorized either by them or the corporation which they represented.

If Lane was duly authorized to "give obligation binding the inhabitants of the plantation" and was intrusted with the order, signed in blank by the assessors, to be filled up and delivered to the person from whom he should procure the means to pay the bounties; such order, when delivered to the party lending the

money for that purpose, comes fairly within the description of the contracts which are made valid and binding by the statute. But it is obvious that to complete her proof here it was necessary for the plaintiff to show how many men were needed to fill the quota; otherwise it could not be known whether the sum loaned was or was not in excess of the sum which Lane was authorized to hire. This was a controverted question of fact, and the jury did not pass upon it, nor did the instructions they received require them to do so.

Moreover, the purpose, for which the money was borrowed, was made known to the plaintiff, and she was bound to know that, without some extraordinary legislative grant of authority, towns and plantations had no power to raise or borrow money to be thus expended. It is incumbent upon her, then, to bring her case within the ratifying act. It was decided in *Sanborn* v. *Machiasport*, 53 Maine, 82, that only the doings at meetings legally notified and held, were made valid by the ratification acts.

The records before us show a notice of the meeting of February 4, 1865, made January 25, under the hands of George D. Bacon and Aaron P. Perkins, assessors, containing articles upon which such action, as the meeting afterwards took, might properly be based.

But proof of the making and signing of such a notice by the assessors will not suffice to show a legal meeting in the absence of proof that it was issued and posted according to the requirements of law. There is no legal evidence that this was done. All that is offered in this behalf is the following certificate signed by the assessors, and apparently indorsed without date upon their warrant for the meeting: "We hereby certify that we have notified the within named inhabitants by posting up a written notice, seven days as the law directs, of the time and place and the intention of said meeting."

This certificate can in no sense be regarded as legal evidence that the proper notice was given. The assessors are not certifying officers. It does not appear when or where their notice was posted, nor whether it was a copy of their warrant.

We cannot accept their opinion, that notice was given "as the law directs," in lieu of the facts.

That any of the requirements of §§ 5, 6, and 7, of c. 3, R. S. of 1857, were observed or that the meeting of February 4, 1865, was in any manner legally called and holden, does not appear.

Until this defect is supplied, it cannot be said that the authority of the parties hiring this money of the plaintiff to bind the inhabitants of the plantation for its repayment, is established.

The *pro forma* ruling was erroneous.

*Exceptions sustained.*

APPLETON, C. J., WALTON, DICKERSON and DANFORTH, JJ., concurred.

LIBBEY, J., having been of counsel, did not sit.